## DUNN v. PARSONS.

(Supreme Court, General Term, Fifth Department. January 18, 1893.)

1. NOTARY PUBLIC—PROTEST—CONCLUSIVENESS OF OFFICIAL REGISTER.

   Code Civil Proc. § 923, provides that a notary's certificate of protest of a note, or of the service of notice thereof, "is presumptive evidence of the facts certified, unless the party against whom it is offered has served the adverse party with his pleading, or within 10 days after a joinder of an issue of fact, an original affidavit" that he has not received the notice. Section 924 provides that, in case of the death of the notary, his certificate is presumptive evidence of a demand of payment, and the memorandum in his official register "is presumptive evidence that a notice of" nonpayment was sent, as stated therein. *Held,* that section 924 makes the requirement of the affidavit unnecessary in the case of the death of the notary, and makes the certificate or memorandum, without restriction, presumptive evidence of the facts stated therein.

2. RECEPTION OF IMMATERIAL EVIDENCE—HARMLESS ERROR.

   When immaterial evidence was admitted, a refusal to strike it out was without prejudice, when the court, in his charge, withdrew the evidence objected to from the consideration of the jury.

Appeal from circuit court, Erie county.

Action by Clarence L. Dunn, as administrator, against Cornelius R. Parsons, on a promissory note. From a judgment dismissing the complaint, entered on a verdict, and from an order denying his motion for a new trial made on the minutes, plaintiff appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

M. N. Morey, for appellant.
George Clinton, for respondent.

DWIGHT, P. J.   This was an  action begun in 1874 against the defendant as indorser of two promissory notes made by J. Getz & Co.  There were three defenses litigated, viz.: (1) That the defendant had never received  nor  been served with notice of protest of either of the notes in suit; (2) that the plaintiff's intestate had purchased the notes, and a judgment which had been recovered thereon against the makers, with the money of, and as the agent of, the makers, and that the notes were thereby paid; (3) that the plaintiff's intestate, being owner of such judgment, had released from the lien thereof certain property of the makers of the notes, whereby the defendant, if charged as indorser, being an accommodation indorser, had been discharged to the extent of the value of the property so released over and above prior incumbrances.   The first and second of these issues were joined, by the original answer of the defendant, in October, 1874; the third was pleaded by an amendment to the answer, which was served on the 20th day of February, 1878. . On the trial, which took place in December, 1888, the plaintiff made proof of presentation, demand, and protest of both notes by the original certificates of the notary public, who was dead, and of service of notices of protest by entries in the notary's register.  On the other hand, the defendant was permitted to put in evidence an affidavit, verified by him on the 20th day of February, 1878, reiterating the denial of his answer that he had ever received any notice of the nonpayment or protest of either of the notes in suit.   The introduction of this affidavit in evidence was objected to by the plaintiff on the grounds (1) that it was not annexed to the answer which  was originally served; (2) that it did not comply with the statute, being a mere denial in the form of pleading; (3) that it was not served in the time required by statute.

The objection on the first ground specified was evidently taken under the statute in force at the time the original answer was served, (Laws 1833, c. 271, § 8.)   That statute, after making the notary's certificate presumptive evidence of demand and notice, provides that the rule shall not apply in any case where the defendant shall annex to his plea an affidavit denying the fact of having received notice, etc.   This ground was plainly untenable, because at the time of the trial the statute of 1833 had been repealed, and the provisions of section 923 of the Code of  Civil Procedure had been substituted therefor; and, the question being not of the right but of the remedy, the later statute, as between the two, necessarily furnished the rule of evidence for the case.   It was apparently under the later statute that the objection to the affidavit on the remaining grounds specified was taken, viz. that it was not in the form, nor served in the time, required by the statute.   By the later statute the certificate of the notary was made presumptive evidence, unless the defendant had served upon the plaintiff, with his answer, or within 10 days after joinder of an issue of fact, an original affidavit to the effect that he had not received notice, etc.   It was apparently to bring the case within the restriction here provided, and thus to deprive

the notarial certificates of their effect as presumptive evidence, that this affidavit was produced and offered in evidence. It would seem that the offer, the objection thereto, and the ruling thereon, were all made in momentary inattention to the provisions of the next section of the statute last cited. That section (Code Civil Proc. § 924) contained the provisions precisely applicable to this case, viz. where the notary who made the presentation, demand, and protest was dead before the trial of the action. In such case his original protest, duly attested, is made presumptive evidence of demand of payment, and the entry in his register presumptive evidence that notice of nonpayment was given at the time and in the manner stated in such entry; and this without any provision for an affidavit of the defendant, either annexed to his answer or served within a specified time after an issue joined. In other words, the section last cited abolishes the affidavit in the case described, and gives to the notarial certificate and memorandum, without restriction, the character of presumptive evidence of the facts stated therein. The affidavit of the defendant in this case was, therefore, immaterial and irrelevant as evidence under the statute, and as common-law evidence was plainly incompetent and improper. But it was not objected to on any such grounds. The grounds of the objection taken were expressly limited to the requirements of "the statute." We have seen that the statute referred to in the first ground of the objection was the statute of 1833, and that the objection was, so far, untenable. It was, we think, equally untenable on the second ground, under section 923 of the Code. The affidavit consisted of a positive denial that the defendant had ever received notice of the nonpayment or protest of either of the notes in suit; and it does not seem to admit of discussion that this was in substantial compliance with the requirement of the section in that respect. The third ground of objection was that the affidavit was not served in the time required by the statute. The reference is here, plainly, to the provision of section 923 of the Code, supra, which took effect September 1, 1877. The time limited thereby for the service of the affidavit was "within ten days after the joinder of an issue of fact," and we have seen that an issue of fact was joined in this action by an amended answer, which, as the record shows, was served on the 20th day of February, 1878, that being the same day on which the affidavit in question was verified. When that affidavit was offered in evidence, counsel for the defendant accompanied the offer with the statement that they had proof of its service on the 23d day of February, 1878, and, although that proof is not in the record, there was no objection to the affidavit on the ground that such proof was not made, but the statement of counsel seems to have been accepted, and the only objection in that respect was that the service was not within the time limited by the statute. The objection to the affidavit, on the same grounds only, was renewed, at the close of the proofs, by a motion to strike out, which was denied. We think no error was committed by the court in either of its rulings on this subject.

The greater part of the evidence in the case was received on the issue of the release of property of the makers from the lien of the judgment held by the plaintiff's intestate, and this evidence related to several parcels of land

in and about the city of Buffalo. Among them was a parcel known as the "Amherst Street" or "Black Rock" property, concerning which some evidence was received, under the objection of the plaintiff, chiefly on the ground that it was not covered by the allegations of the answer. The court overruled the objection for the present, remarking that when the evidence on that subject was all in it might appear not to establish any defense for the reason stated. The evidence showed that the makers of the notes acquired title to the property in 1864, subject to a small mortgage to the Erie County Savings Bank; that in December, 1870, they incumbered it, with other property, by a mortgage to E. R. Jewett of $15,000, both of which mortgages were prior in lien to the judgment recovered by Childs on the notes in suit, which was afterwards assigned to the plaintiff's intestate. It also appeared that the $15,000 mortgage above mentioned was foreclosed in 1874 and 1875, and that the property was sold on the judgment of foreclosure to one Dodge for the sum of $10,000. Upon this and other evidence, plainly showing that the evidence in respect to the Amherst street property did not establish any defense to the action, counsel for the plaintiff moved to strike out the testimony and exhibits relating thereto, which motion was denied, but in his charge the learned judge plainly withdrew the Amherst street property from the consideration of the jury. In speaking of the several parcels of real estate upon which the judgment was a lien, he said, "I shall not discuss the Amherst street property." Again, after recapitulating all the evidence which it was proper for the jury to consider as bearing upon the question of the release of property from the lien of the judgment, and which did not include any evidence relating to the Amherst street property, the court said: "There was still other real estate that this judgment was a lien upon, but the title to the other real estate has passed from the Getzes under foreclosure of mortgages, and has been cut off in that way, and I do not understand that Mr. Dunn would be responsible therefor, and consequently it will not be necessary for me to discuss the question further." Again, in response to a request to charge that the defendant must not be allowed on this trial any sums which Dunn has received on sales of any of the Amherst street property since the deed thereof to him from Dodge, the court said, "I have virtually taken the Amherst street property from the jury already;" and, further, "the jury has nothing to consider in that respect." It seems very clear that none of the exceptions to rulings of the court in this connection point to any error to the prejudice of the plaintiff. It is apparent that the admission of the evidence on the subject of the Amherst street property was tentative, merely, the court remarking more than once, in substance, that the evidence objected to would be of no materiality unless it was followed up by further proofs; and, when it became finally apparent that the evidence in question did not tend to establish any defense, the whole subject to which it related was distinctly and wholly withdrawn from the attention of the jury. After this it would have been an idle ceremony to "strike out" the evidence relating to that subject.

We have examined the other exceptions to which our attention has been called, and find none which seem to require discussion. The sev-

eral issues litigated were presented to the jury by the court in a full and careful charge, and with instructions which seem to us to have been in all respects correct, and the verdict must be conclusive upon the questions of fact so submitted. The judgment and order appealed from must be affirmed. So ordered. All concur.